## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

DEBRA R. THOMPSON and JOHN THOMPSON )
                                     )
            Plaintiffs,              )
                                     )        C. A. No.
            v.                       )
                                     )
                                     )        TRIAL BY JURY DEMANDED
STATE OF DELAWARE DEPARTMENT OF      )
SERVICES for CHILDREN YOUTH          )
and  FAMILIES; ALISON McGONIGAL;     )
KARRYL McMANUS;ANGELA PORTER; and    )
JOSETTE MANNING                      )
                                     )
            Defendants.              )

## COMPLAINT

### JURISDICTION

1.      This Court has original jurisdiction over this matter that is brought to address the deprivation of rights, privileges and immunities covered by the Constitution and laws of the United States pursuant to 28 U.S.C. §§ 1331, 1343.  The Federal issues involved arise under 42 *U.S.C.* §§,1983,1985, and the United States Constitution. This Court has supplemental jurisdiction over all other claims asserted herein pursuant to 28 *U.S.C.* §1367, in that they are related to those issues over which original jurisdiction is conferred and are part of the same controversy.

### PARTIES

2.      Plaintiff, Debra Thompson was an employee of Defendant State of Delaware. Her address is 220 Clearview Lane, Lincoln University, Pennsylvania (hereafter "Plaintiff" or "Mrs. Thompson").  Mrs. Thompson had a college degree and experience in the business world then moved into education.  She has been a teacher and administrator at numerous levels.  She

has a Masters in Education and, before the employment which is the subject of this action, she won praise as a Development Coach in a new program for the University of Delaware's Professional Development Center for Educators/Delaware Academy for School Leadership.

3. Plaintiff, John Thompson is, and at all times pertinent has been, the husband of Mrs. Thompson (hereafter "Husband" or "Mr. Thompson").

4. Defendant, State of Delaware, Department of Services for Children, Youths and their Family (DSCYF) was the employer of Plaintiff .

5. Defendant Alison McGonigal was at all times pertinent the Deputy Director or the Director of the Division of Management Support Services of DSCYF, Plaintiff's immediate supervisor, and a decision maker with respect to employment actions taken against Plaintiff. She is sued in her individual and official capacities.

6. Defendant Karryl McManus was, or at times pertinent, acted as, the Director of the Division of Management Support Services within DSCYF and a decision maker with respect to employment actions taken against Plaintiff. She is sued in her individual and official capacities.

7. Defendant Josette Manning (hereafter Secretary Manning) at times pertinent was the Cabinet Secretary of DSCYF, a decision maker with respect to employment actions taken against Plaintiff, and a policymaker for DSCYF and the State of Delaware. She is sued in her individual and official capacities.

8. Defendant Angela Porter (hereafter Porter) was at times pertinent the Education Supervisor and from in or about March 2017, with the acquiescence of the Defendants and others acting as agents or employees of the State and acting under color of state law, assumed the role of Plaintiff's supervisor and was a decision maker with respect to employment actions, including

termination, taken against Plaintiff after Plaintiff had been assigned a teaching position. She is sued in her individual and official capacities.

## GENERAL ALLEGATIONS

### Plaintiff hired as Education Supervisor

9.      In the spring of 2016 Mrs. Thompson, then employed as Development Coach for the Professional Development Center for Educators/Delaware Academy for School Leadership at the University of Delaware, applied for the advertised open position with the State of Delaware as the Education Unit Supervisor for DSCYF. (Hereafter "Education Supervisor")

10.      During the interview process, Defendants told Plaintiff the prior Education Supervisor, Angela Porter ("Porter") had been terminated for personal reasons. Defendants failed to disclose to Plaintiff that Porter had pursued a Grievance with respect to her termination and the appeal process was ongoing.

11.      Plaintiff went through the interview process and in June 2016 was offered the Education Supervisor position.

12.      Plaintiff accepted and began employment as the Education Supervisor on or about July 11, 2016.   Her initial annual salary was over $111,000 and soon increased to over $115,000.00.

13.      The State, DSCYF, the individual Defendants then employed by the State, and other officers agents and employees of the State knew, should have known, and/or are chargeable with knowledge, that Plaintiff believed, consistent with Delaware law, (29 *Del C* §5922) that during the period she was considered a probationary employee, her employment could be terminated only if the services she performed were unsatisfactory.

### Mrs. Thompson's Performance as Education Supervisor

14. When hired it had been made clear to Plaintiff that the DSCYF administration had concerns that the education side of the Department was weak and not up to date on current rules, laws and process and wanted Plaintiff to investigate and address these.

15. With no written, and only casual verbal, guidance Plaintiff began to revamp and upgrade the system and administrators and her supervisors welcomed her support and the positive changes.

16. Between her hiring in July 2016 until she was wrongfully removed from the Education Supervisor position in March 2017, Plaintiff's investigations disclosed to Defendants, *inter alia* misuse of funds, lack of accountability and oversight, and favoritism, including but not limited to:

  a.) Grant funding unaccounted for with no explanation;

  b.) Teachers without proper credentials;

  c.) Funds spent on items not used;

  d.) A pattern of favoritism for "downstate" facilities (where Porter had previously worked);

  e.) "Read 180" program books ordered but still in packages 3 years later;

  f.) Professional Development books purchased but not used;

  g.) New curricula materials purchased yearly but not used or accounted for;

  h.) Books delivered to classrooms without explanation and unused

  i.) Computer equipment purchased which was unused;

  j.) Boxes of items purchased for special needs students but never distributed or used;

k.)     Software was purchased for all when some units did not need or could not use it, and/or needed something different.

l.)     Not compliant with DOE Regulations for teacher evaluations.

m.)     Contractors paid for services not provided

n.)     Misuse of state vehicles

o.)     Purchases of items with insufficient or no documented justification

17.     In addition to discovering the existing and ongoing defalcations Mrs. Thompson, in the short time she was Education Supervisor, brought the Education Unit into compliance, provided more support to the administrators, and handled the budget funding more efficiently.

18.     Into February of 2017 Plaintiff's associates and co-workers including her immediate supervisor, Defendant McGonigal, and the head of DSCYF, Defendant Secretary Manning praised her performance.

19.     Plaintiff's written performance evaluation of her services as Education Supervisor, signed on February 7, 2017 by Defendant McGonical and on February 6, 2017 by Defendant McManus, acknowledged her performance "Meets Expectations".

20.     A "Performance Improvement Plan" presented by Defendants to Plaintiff at the same time as the "Meets Expectation" evaluation, purported to cover the period from February 6 to May 6 , 2017 with re-evaluations set for March 6 and April 6. 2017; however, on or about February 17, 2017 Defendant McGonigal informed Plaintiff that Porter was to replace her as Education Supervisor within 30 days, and no re-evaluations were held.

**Reinstatement of Former Education Supervisor and Demotion of Mrs. Thompson**

21.     In early October 2016 Plaintiff heard for the first time that Porter had successfully contested her termination from the Education Supervisor position.

22.     When Plaintiff expressed her concerns that Porter was to be reinstated she was falsely assured in writing on October 6, 2016 by Defendant McGonigal, that to enhance DSCYF's focus on the transfer from residential facilities, the State had established a new position within DSCYF, and that, *" Angela Porter will be filling this position effective October 17 and will report directly to you (Deb)..."*

23.     Porter returned in the new position of "Transition  Coordinator" but it was not long before Plaintiff was informed by associates that Porter was insisting  the State had been ordered to reinstate her to Plaintiff's Education Supervisor position.

24.     Upon information and belief, on or before October 6, 2016, Defendants were aware that as a result of a September 15, 2016 hearing, the Merit Employee Relations Board (MERB) determined that the appropriate penalty for  Porter's conduct was not termination, but suspension without pay from November 15, 2015 until October 15, 2016, and that the MERB ordered Porter to be reinstated to the Education Supervisor position by that date.

25.     Though Defendants had known for months  the MERB ordered reinstatement of Porter to her former position, it was not until February 17, 2017 that Defendant McGonigal verbally informed Plaintiff that  Porter had "won her appeal" and was to be reinstated in 30 days.

26.     Upon information and belief Defendants disseminated false and misleading information concerning Plaintiff's professional reputation and abilities because within days of February 17, 2017 Plaintiff began hearing from coworkers and associates that the perception within and without DSCYF was that Plaintiff was being demoted for poor performance.

27.     At no time was Plaintiff informed verbally or in writing that her removal from the Education Supervisor position was due to unsatisfactory service or performance.

28.     She was denied the right to pursue a Grievance with the respect to her termination as Education Supervisor, and was provided no pre-termination or post termination process to challenge the employment action.

29.     Plaintiff expressed a willingness to perform the functions of the Transition Coordinator position originally created for Porter.

30.     Plaintiff was purportedly assigned Transition Coordinator position and/or placed on Special Assignment from on or about March 20 to May 19, 2017, but her attempts to fulfill assignments were thwarted by Porter and the other Defendants, including Defendants knowingly false claim Mrs. Thompson did not possess appropriate certifications.

31.     Though Porter had only recently been reinstated after an 11 month suspension for misconduct and poor judgment, Defendants effectively made her Plaintiff's supervisor.

32.     Ultimately, with no notice to Plaintiff, Defendants: unilaterally reduced her to a teaching position for which she did not yet have the required special education certification; gave Porter supervisory authority over her, and reduced her salary from over $115,000 to approximately $85,000.

**Termination of Plaintiff's Employment**

33.     On May 19, 2017 Plaintiff was hospitalized for emergency gallbladder surgery. She was disabled from employment from until October 2017.

34.     This was at about the same time Defendants, without notice to Plaintiff, reassigned her to a teaching position at a reduced salary. While out on disability in August 2017,

7

Plaintiff, during the process of renewing her Pennsylvania credentials, Plaintiff discovered Defendants had reclassified her as a teacher.

35.     At about this time Defendants began asserting Mrs. Thompson did not yet have the appropriate special education DOE certifications for the teaching position to which the Defendants had assigned her.

36.     Plaintiff returned to her assigned work teaching at the Terry Psychiatric Children's Center in October 2017. In January 2018 she was again hospitalized, and went on disability leave.

37.     The Defendants continued to assert Plaintiff must acquire DOE certifications to retain her job, but refused to attempt to provide Plaintiff with any of the requests for accommodations, waivers or exemptions which are commonly afforded teachers who were unable to timely obtain certifications.

38.     Instead, even though they knew Plaintiff was disabled and unable to work, the Defendants asserted Plaintiff must acquire certifications that would require mentored course work and on the job performance evaluation all under the complete control of Porter.

39.     In April 2018 Plaintiff was given notice by Porter of recommended termination for failure to obtain the purportedly required certification.

40.     Plaintiff pursued a Grievance, and a hearing with Porter as Hearing Officer, was held April 24, 2018. Even though she knew it was virtually impossible, Porter ordered Plaintiff would have until June 30, 2018 to obtain the credentials.

41.     Defendants knew the purportedly required credentialing would require mentored course work and on the job performance evaluation all under the complete control of Porter, and

again refused to request or allow the accommodations, waivers or exemptions which are commonly afforded teachers who lack, (or purportedly lack) necessary certifications.

42.     As Defendants planned, Plaintiff was unable to acquire the purported certification and her employment was terminated through a Notice from Defendant Secretary Manning dated July 2, 2018. She was offered no right to pursue an appeal or Grievance in the Notice of Termination, or otherwise.

43.     Despite Plaintiff's protests of bias, Porter was permitted by DSCYF and the other individual Defendants, to make employment decisions concerning Plaintiff, and take employment actions against Plaintiff, including but not limited to:

    a.)     terminating Plaintiff's employment as a teacher;

    b.)     controlling and manipulating the Grievance Process so as to destroy any opportunity of a fair process for Plaintiff, including acting as hearing officer;

    c.)     disseminating false, misleading and defamatory information regarding Plaintiff to prospective employees including public education agencies in other states.

**Plaintiff Attempts to Obtain Other Employment.**

44.     Plaintiff, beginning on or about August 1, 2017 attempted to procure employment by submitting over 60 applications for teaching and administrative positions in education in Delaware, Pennsylvania and Maryland. She received no offer until August 8, 2018, when she was offered and accepted a lower paying teaching position in St. Georges County MD which will involve a daily commute of over 200 miles.

45.     Defendants have intentionally and with malice, inappropriately disseminated to the public and to governmental entities, false, misleading, and biased information relating to Plaintiff's employment with the DSCYF which has damaged her professional reputation.

46.     The actions of Defendants have caused Mrs. Thomson to suffer financial loss, damage to her reputation, extreme emotional and mental damage and distress, exacerbated her physical ailments, and injured and interfered with the marital relationship between her and her Husband, Plaintiff John Thompson.

**COUNT I.     VIOLATION OF FOURTEENTH AMENDMENT (Claims against the State (DSCYF), and all individual Defendants in their official capacity, for injunctive relief and damages pursuant to 42 *USC* 1983)**

47.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

48.     As set forth by State Law (29 *Del C* § 5922) Plaintiff's employment as a probationary employee in the State's merit system could only be terminated for unsatisfactory performance of services; thus her interest in continued employment is a property right protected by the law and Constitution of the United States.

49.     Plaintiff's employment by Defendants as a teacher who could be terminated only for cause pursuant to State Law, is also an interest in continued employment that is a property right protected by the law and Constitution of the United States.

50.     Plaintiff's liberty interests protected by the Constitution of the United States include the right to be free from state action causing stigma, in the form of *inter alia,* publication or dissemination of information that damages her professional reputation, if such is accompanied by state action which causes a deprivation of a right protected by state or federal law.

51.     The actions of the Defendants, individually and as agents for the state, set forth below, alone and in concert with each other and with other state officials, deprived Plaintiff of property and liberty rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, entitling Plaintiff to reinstatement and other prospective equitable relief and to damages under 42 *U.S.C.* § 1983:

      a.   Refusing to allow Plaintiff access to the Grievance process;

      b.   Terminating Plaintiff's employment as Education Supervisor and making her a teacher without effective notice and with no pre or post termination process;

      c.   Terminating Plaintiff's employment as a teacher through a biased process, including but not limited to, assigning or allowing Porter to supervise and evaluate Plaintiff;

      d.   Disseminating false, misleading and defamatory information concerning Plaintiff.

**COUNT II.  DUE PROCESS (Against McGonigal Pursuant to 42 *USC* § 1983)**

52.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

53.     As set forth by State Law (29 *Del C* § 5922) Plaintiff's employment as a probationary employee in the State's merit system could only be terminated for unsatisfactory performance of services; thus her interest in continued employment is a property right protected by the law and Constitution of the United States.

54.     Plaintiff's employment by Defendants as a teacher who could be terminated only for cause pursuant to State Law, is also an interest in continued employment that is to a property right protected by the law and Constitution of the United States.

55.     Plaintiff's liberty interests protected by the Constitution of the United States include the right to be free from state action causing stigma, in the form of *inter alia,* publication or dissemination of information that damages her professional reputation, if such is accompanied by state action which causes a deprivation of a right protected by state or federal law.

56.     The actions of Defendant McGonigal set forth below, alone and in concert with the individual Defendants, and other state officials, deprive Plaintiff of property and liberty rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, subjecting Defendant McGonigal to liability under 42 U.S.C. § 1983:

      a.   Refusing to allow Plaintiff access to the Grievance process;

      b.   Terminating Plaintiff's employment as Education Supervisor and making her a teacher without effective notice and with no pre or post termination process;

      c.   Terminating Plaintiff's employment as a teacher through a biased process;

      d.   Disseminating false, misleading and defamatory information concerning Plaintiff.

57.     The aforesaid actions of Defendant McGonigal were taken negligently, intentionally, and recklessly and/or taken with deliberate disregard of Plaintiff's rights. At all times pertinent, Defendant McGonigal was acting under color of state law in her dealings with Plaintiff.

## COUNT III. DUE PROCESS (Against McManus Pursuant to 42 *USC* § 1983)

58.    Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

59.    As set forth by State Law (29 *Del C* § 5922) Plaintiff's employment as a probationary employee in the State's merit system could only be terminated for unsatisfactory performance of services; thus her interest in continued employment is a property right protected by the law and Constitution of the United States.

60.    Plaintiff's employment by Defendants as a teacher who could be terminated only for cause pursuant to State Law, is also an interest in continued employment that is to a property right protected by the law and Constitution of the United States.

61.    Plaintiff's liberty interests protected by the Constitution of the United States include the right to be free from state action causing stigma, in the form of *inter alia,* publication or dissemination of information that damages her professional reputation, if such is accompanied by state action which causes a deprivation of a right protected by state or federal law.

62.    The actions of Defendant McManus set forth below, alone and in concert with the individual Defendants, and other state officials, deprive Plaintiff of property and liberty rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, subjecting Defendant McManus to liability under 42 U.S.C. § 1983:

      a.    Refusing to allow Plaintiff access to the Grievance process;

      b.    Terminating Plaintiff's employment as Education Supervisor and making her a teacher without effective notice and with no pre or post termination process;

      c.    Terminating Plaintiff's employment as a teacher through a biased process;

      d.  . Disseminating false, misleading and defamatory information concerning Plaintiff.

63. The aforesaid actions of Defendant McManus were taken negligently, intentionally, and recklessly and/or taken with deliberate disregard of Plaintiff's rights. At all times pertinent, Defendant McManus was acting under color of state law in her dealings with Plaintiff.

**COUNT IV. DUE PROCESS (Against Manning Pursuant to 42 *USC* § 1983)**

64. Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

65. As set forth by State Law (29 *Del C* § 5922) Plaintiff's employment as a probationary employee in the State's merit system could only be terminated for unsatisfactory performance of services; thus her interest in continued employment is a property right protected by the law and Constitution of the United States.

66. Plaintiff's employment by Defendants as a teacher who could be terminated only for cause pursuant to State Law, is also an interest in continued employment that is to a property right protected by the law and Constitution of the United States.

67. Plaintiff's liberty interests protected by the Constitution of the United States include the right to be free from state action causing stigma, in the form of *inter alia,* publication or dissemination of information that damages her professional reputation, if such is accompanied by state action which causes a deprivation of a right protected by state or federal law.

68. The actions of Secretary Manning set forth below, alone and in concert with the individual Defendants, and other state officials, deprive Plaintiff of property and liberty rights

without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, subjecting Defendant Manning to liability under 42 U.S.C. § 1983:

    a.  Refusing to allow Plaintiff access to the Grievance process;

    b.  Terminating Plaintiff's employment as Education Supervisor and making her a teacher without effective notice and with no pre or post termination process;

    c.  Terminating Plaintiff's employment as a teacher through a biased process;

    d.  Disseminating false, misleading and defamatory information concerning Plaintiff.

69.   The aforesaid actions of Secretary Manning were taken negligently, intentionally, and recklessly and/or taken with deliberate disregard of Plaintiff's rights. At all times pertinent, Defendant Secretary Manning was acting under color of state law in her dealings with Plaintiff.

**COUNT V. DUE PROCESS (Against Porter Pursuant to 42 *USC* § 1983)**

70.   Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

71.   As set forth by State Law (29 *Del.C.*§5922) Plaintiff's employment as a probationary employee in the State's merit system could only be terminated for unsatisfactory performance of services; thus her interest in continued employment is a property right protected by the law and Constitution of the United States.

72.   Plaintiff's employment by Defendants as a teacher who could be terminated only for cause pursuant to State Law, is also an interest in continued employment and a property right protected by the law and Constitution of the United States.

73.     Plaintiff's liberty interests protected by the Constitution of the United States include the right to be free from state action causing stigma, in the form of *inter alia,* publication or dissemination of information that damages her professional reputation, if such is accompanied by state action which causes a deprivation of a right protected by state or federal law.

74.     The actions of Defendant Porter set forth below, alone and in concert with the individual Defendants, and other state officials, deprive Plaintiff of  property and liberty rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, subjecting Defendant Porter to liability under 42 *U.S.C.* § 1983:

      a.     Interfering with Plaintiff's access to the Grievance process by acting with intentional bias and refusing to allow or provide a fair and unbiased process;

      b..     Terminating Plaintiff's employment as a teacher;

      c.     Disseminating false, misleading and defamatory information concerning Plaintiff.

75.     The aforesaid actions of Defendant Porter were taken negligently, intentionally, and recklessly and/or taken with deliberate disregard of Plaintiff's rights.  At all times pertinent, Defendant Porter was acting under color of state law in her dealings with Plaintiff.

**COUNT VI  CONSPIRACY TO VIOLATE CIVIL RIGHTS AGAINST ALL INDIVIDUAL DEFENDANTS (Against all Defendants pursuant to 42 USC §§1983,1985)**

76.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

77.     The Individual Defendants agreed with each other to deprive Plaintiff of her procedural and substantive right to due process of law with respect to employment decisions affecting her property and liberty interests.

78.     Defendants engaged in overt acts in furtherance of their agreement by: refusing to allow Plaintiff access to the Grievance process when terminating her from the Education Supervisor position; concealing from Plaintiff that Porter had been ordered reinstated to the Education Supervisor position; allowing Porter to make employment decisions concerning Plaintiff, and take employment actions against Plaintiff, including but not limited to:

       a.)     terminating Plaintiff's employment as a teacher;

       b.)     controlling and manipulating the Grievance Process so as to destroy any opportunity of a fair process for Plaintiff;

       c.)     disseminating false, misleading and defamatory information regarding Plaintiff to prospective employees including public education agencies in other states:

79.     Pursuant to their agreement and consistent with their overt acts, Defendants acted in conspiracy with one another to violate the Civil Rights of Plaintiff in violation of 42 *USC* §1985.

80.     Defendants are jointly and severally liable pursuant to Plaintiff, under 42 *USC* §1983 and §1985.for conspiracy to violate her civil rights guaranteed by the laws and Constitution of the United States.

**COUNT VII   WRONGFUL TERMINATION/ BREACH OF CONTRACT**
**EDUCATION SUPERVISOR POSITION (State Law Claim against the Employer)**

81.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

82.     It is the public policy of the State of Delaware, as set forth by statute, 29 *Del C* § 5922 that individuals employed by the State and its agencies as Probationary employees can be removed from their position only if they provide unsatisfactory performance of services.

83.     Plaintiff's performance at all times was satisfactory and she was never notified by any Defendant that the termination of her employment with DSCYF as Education Supervisor was because she had failed to provide satisfactory performance.

84.     Defendants fabricated false justifications for the termination of Plaintiff's employment as Education Supervisor, by making false claims in a contrived Performance Improvement in or about February 2017.

85.     The violation of the public policy of this State and the fabrication of false justifications in the termination of her employment with DSCYF as Education Supervisor constitute violations of the covenant of good faith and fair dealing contained in every employment agreement in this state.

86.     The violation of the Covenant of Good Faith and Fair Dealing amounts to a wrongful termination of Plaintiff's employment with DSCYF as Education Supervisor and breach of contract by DSCYF entitling Plaintiff to damages for past present and future loss of income, including the loss of benefits associated with her employment as Education Supervisor.

### COUNT VIII   WRONGFUL TERMINATION/ BREACH OF CONTRACT TEACHING POSITION (State Law Claim against the Employer)

87.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

88.     It is the public policy of the State of Delaware, as set forth by statute, that individuals employed by the State as teachers can be removed from their position only for cause.

89.     Defendants never notified Plaintiff of any deficiencies with respect to her performance as a teacher, but gave notice only that Plaintiff lacked a purportedly required certification from the DOE.

90. Defendants fabricated false justifications for the termination of Plaintiff's employment as a teacher by asserting she was required to undergo on the job evaluation by Porter for DOE certification, all the while knowing:

      a.) Plaintiff was on disability leave and the DOE routinely granted appropriate waivers under such circumstances;

      b.) Porter was biased against Plaintiff and could neither fairly perform an evaluation nor act as an unbiased hearing officer in Plaintiff's Grievance proceedings.

91. The violation of the public policy of this State and the fabrication of false justifications in the termination of her employment as a teacher constitute violations of the covenant of good faith and fair dealing contained in every employment agreement in this state.

92. The violation of the Covenant of Good Faith and Fair Dealing amounts to a wrongful termination of Plaintiff's employment as a teacher and breach of contract by DSCYF entitling Plaintiff to damages for past present and future loss of income, including the loss of benefits associated with her employment as a teacher.

## COUNT IX PROMMISORY ESTOPPEL (State Law Claim Against the Employer)

93. Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

94. In order to induce Plaintiff to accept the position of Education Supervisor in June 2016 Defendants purposefully concealed the fact that Porter was in the process of appealing her dismissal from that position some 7 months earlier, thereby expressly or impliedly promising

Plaintiff that, in accordance with the requirements of Delaware law, she could and would be removed during the probationary period only for deficient performance of services.

95.     In October 2016 Defendants, in order to induce Plaintiff to remain in the position of Education Supervisor Defendants expressly promised Plaintiff in writing she would not be removed and that when Porter returned Plaintiff would, in fact, be Porter's supervisor.

96.     Plaintiff reasonably relied on the express and implied promises that Plaintiff was secure in her position of Education Supervisor, as long a as her service was satisfactory, and left her prior employment with the University of Delaware and thereafter did not pursue other opportunities.

97.     Defendants promises to Plaintiff must be enforced  to prevent injustice, prevent Defendants from claiming  there were no agreements and that Plaintiff was an at-will employee, and to allow Plaintiff to claim  damages for past, present and future loss of income, including the loss of benefits associated with her employment as Education Supervisor.


## COUNT X  DEFAMATION (State Law Claim Against All Defendants).

98.     Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

99.     Defendants have defamed Ms Thompson by, including but not limited to, fabricating then publishing announcing and disseminating, (including dissemination to prospective employers and the education departments of neighboring states) knowingly false accusations and justifications for terminating Plaintiff's employment; falsely accusing her of deficient communication skills, wrongfully disclosing confidential information, being

disrespectful and inappropriately confrontational, and failing to implement initiatives, all of which also amounts to falsely maligning her in her profession or occupation.

100. Defendants, acting individually and as agents and employees of the State made these false accusations maliciously and for the purpose of injuring Ms. Thompson.

101. Defendants' knowing, wrongful, intentional, and malicious defamation was a proximate cause of Ms. Thompson suffering, *inter alia*, past, present, and future emotional and mental distress, medical expenses and loss of reputation entitling her to remedies and damages including, but not limited to, compensatory, equitable, and punitive damages as set forth below.

## COUNT XI  MR. THOMPSONS CLAIM FOR LOSS OF CONSORTIUM
### (State Law Claim Against All Defendants.)

102. Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

103. As a result of the aforesaid mental, emotional and physical injuries to Ms. Thompson caused by Defendants, Husband, Mr. Thompson has lost the care, comfort, companionship, society and consortium of his wife.

## COUNT XII  MR. THOMPSON'S CLAIMS AGAINST THE INDIVIDUAL
### DEFENDANTS (Pursuant to 42 USC 1983)

104. Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

105. At all times pertinent hereto Mr. Thompson was the Husband of Plaintiff.

106.   As spouse of Plaintiff, Mr. Thompson possess a liberty interest under the Due Process Clause which entitles he and his wife to pursue happy, intimate association, free from unlawful government intrusion.

107.   The acts of the individual Defendants, as set forth in Counts I through V herein constitute unlawful intrusion into Mrs. and Mr. Thompson's marital relationship, entitling him to damages for the lost companionship society and consortium.

## COUNT XII. DELAWARE WHISTLEBLOWERS

108.   Plaintiff repeats, re-alleges and incorporates herein by reference the allegations set forth in paragraphs 1 through the preceding paragraph herein.

109.   As set forth herein, while employed as Education Supervisor, Plaintiff reported in writing and verbally numerous instances, which when considered individually and/or as evidencing a pattern, demonstrate employer's conduct materially inconsistent with, and a serious deviation from, financial, management and accounting standards implemented pursuant to state laws, rules or regulations promulgated, to protect from misappropriation, and waste of public funds or assets.

110.   In response to Plaintiff's reports the State, acting through the individual Defendants and other officers and agents, illegally and in violation of the Whistleblower's Act (19 *Del C* 1701 *et seq*) retaliated by: terminating her employment as Education Supervisor; reducing her pay; terminating her employment as a teacher; and disseminating false and misleading information regarding her performance.

111.   Defendants' violations of the Whistleblower's Act entitle Plaintiff to damages for loss of past, present and future income, wages and benefits as well as cost and attorney's fees.

1)      For Ms Thompson's past, present and future loss of wages, including overtime, bonuses, pension plans, health benefits and other benefits guaranteed to Plaintiff associated with her employment with the State.

2)      Compensation to Ms. Thompson for emotional, mental, psychological and physical injury, loss of reputation, and damages including any medical expenses incurred.

3)      Reinstatement of Ms. Thompson to the Education Supervisor or equivalent position.

4)      Compensation to Mr. Thompson for loss of consortium and liberty interests.

5)      An award of punitive damages .

6)      An award of all costs including all attorneys' fees;

7)      An award of pre and post judgment interest on all damages and awards; and

8)      For all and other relief the Court deems just and appropriate.


**BIGGS AND BATTAGLIA**


*/s/Victor F. Battaglia, Sr.*
Victor F. Battaglia, Sr. (ID#156)
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
*Attorneys for Plaintiff*


DATED: August 13, 2018