IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBRA R. THOMPSON and JOHN THOMPSON, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF DELAWARE DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMLIES, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 18-1236 (MN) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Victor F. Battaglia, Sr., BIGGS AND BATTAGLIA, Wilmington, DE – Attorneys for Plaintiffs

Joseph C. Handlon, Adria B. Martinelli, Deputy Attorneys General, State of Delaware, Department of Justice, Wilmington, DE – Attorneys for Defendants.

September 5, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

There are two motions before the Court. The first, a "Combined Motion for Summary Judgment and for Dismissal" (D.I. 13) ("Defendants' Motion"), was submitted by Defendants Alison McGonigal ("McGonigal"), Karryl McManus ("McManus"), Angela Porter ("Porter"), Josette DelleDonne Manning ("Manning") (collectively "Individual Defendants"), and the Delaware Department of Services for Children, Youth and their Families ("DSCYF" or "Department" and collectively with the Individual Defendants "Defendants") seeking dismissal pursuant to Rule 12(b)(6), in part, and summary judgment pursuant to Rule 56, in part. The second is the motion of Plaintiff Debra Thompson ("Thompson") for partial summary judgment (D.I. 21) with respect to her claims under 42 U.S.C. § 1983. For the reasons discussed below, the Court will GRANT-IN-PART and DENY-IN-PART Defendants' Motion and DENY Plaintiff Debra Thompson's motion for partial summary judgment[1].

## I. BACKGROUND

On or about July 11, 2016, Thompson left her job as a Development Coach for the Professional Development Center for Educators/Delaware Academy for School Leadership at the University of Delaware to take a job as an Education Supervisor with DSCYF. (D.I. 1 ¶¶ 9, 12). The Education Supervisor position had previously been held by Defendant Porter, who had been allegedly "terminated for personal reasons." (*Id.* ¶ 10). Thompson alleges that she was not informed that Porter had filed a grievance with respect to the termination and that an appeal process

---

[1] The motions for summary judgment are denied as premature. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, ***after adequate time for discovery*** and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added). In this case, there has been no responsive pleading, no scheduling order, and no discovery. Therefore, it is premature for the Court to address summary judgment motions.

1

was ongoing. (*Id.*). The Complaint states that "the DSCYF administrators had concerns that the education side of the Department was weak and not up to date on current rules, laws and process" and after Thompson started in the new role she "began to revamp and upgrade the system" and uncovered "misuse of funds, lack of accountability and oversight, and favoritism." (*Id.* ¶¶ 14-16). Thompson alleges that, despite these issues, "in the short time she was Education Supervisor, [she] brought the Education Unit into compliance, provided more support to the administrators, and handled the budget funding more efficiently." (*Id.* ¶ 17). The Complaint contends that Thompson's performance was praised by her associates and co-workers and garnered a written performance evaluation of "Meets Expectations." (*Id.* ¶¶ 18-19).

In early October 2016, Thompson learned that Porter had filed a grievance and successfully contested her termination, and that the Merit Employee Relations Board ("MERB") ordered Porter be reinstated. (*Id.* ¶¶ 21, 24). The Complaint alleges that Thompson was then informed in writing that, upon her return, Porter would be filling a newly created position at DSCYF titled Transition Coordinator. (*Id.* ¶ 22). On February 17, 2017, Defendant McGonigal then verbally informed Thompson that Porter would be reinstated as Education Supervisor. (*Id.* ¶ 25). Thompson alleges that she was told she would become the Transition Coordinator. (*Id.* ¶30). She further alleges that "her attempts to fulfill assignments were thwarted by Porter and the other Defendants." (*Id.*). The Complaint alleges that Thompson was denied the right to a grievance and both pre-termination and post termination processes. (*Id.* ¶ 28).

Thompson claims that "[u]pon information and belief Defendants disseminated false and misleading information concerning Plaintiff's[2] professional reputation and abilities because within

---

[2] The Complaint names two plaintiffs, but often refers to "Plaintiff" in the singular to refer to Plaintiff Debra Thompson.

days of February 17, 2017 Plaintiff began hearing from coworkers and associates that the perception within and without DSCYF was that Plaintiff was being demoted for poor performance." (*Id.* ¶ 26).

On May 19, 2017, Thompson was hospitalized for an emergency surgery and could not work until October 2017. (*Id.* ¶ 33). The Complaint alleges that during this time, "Defendants[] unilaterally reduced her to a teaching position for which she did not yet have the required special education certification" and "gave Porter supervisory authority over her." (*Id.* ¶¶ 32, 34). Thompson claims that she returned to work in October 2017 to a teaching position at Terry Psychiatric Children's Center but was then hospitalized again in January 2018. (*Id.* ¶ 36). She further claims that during her time as a teacher, Defendants asserted that she needed appropriate special education certifications. (*Id.* ¶ 35). The Complaint claims that in April 2018, Porter recommended that Thompson be terminated for failure to obtain required certification. (*Id.* ¶ 39). Thompson filed a grievance and attended a hearing on April 24, 2018, where it was determined that she would have until June 30, 2018 to obtain the necessary credentials. (*Id.* ¶ 40). The Complaint asserts that "Plaintiff was unable to acquire the purported certification and her employment was terminated through a Notice from Defendant [] Manning dated July 2, 2018." (*Id.* ¶ 42). Thompson contends that she applied to over 60 teaching and administrative positions but did not gain employment until August 8, 2018. (*Id.* ¶ 44).

On August 13, 2018, Thompson filed this employment action against DSCYF, McGonigal, McManus, Porter, and Manning claiming that her demotion and termination violate both federal and state law. (D.I. 1). Defendants' Motion seeks dismissal pursuant to Rule 12(b)(6) in part and summary judgment pursuant to Rule 56 in part. (D.I. 13). Plaintiffs oppose. (D.I. 16).

## II. LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## III. DISCUSSION

### A. Count I: Violation of the Fourteenth Amendment

Count I alleges violation of the Fourteenth Amendment by DSCYF and the Individual Defendants in their official capacities. The Complaint alleges that the Defendants "deprived Plaintiff of property and liberty rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, entitling Plaintiff to reinstatement and other prospective equitable relief and damages under 42 U.S.C. § 1983." (D.I. 1 ¶ 51).

#### 1. Eleventh Amendment

As an initial matter, Count I must be dismissed as to DSCYF in its entirety and the Individual Defendants to the extent that Plaintiffs seek money damages. The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that a[] . . . State is immune from suits brought in federal courts by her own citizens." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Absent consent or waiver, the Eleventh Amendment bars suits in federal court naming a state or its departments as defendants. *See Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and, as] such, it is no different from a suit against the State itself" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Courts in this district have repeatedly held that "§ 1983 claims for monetary damages against a State, state

agency, or a state official in his official capacity are barred by the Eleventh Amendment." *See Stones v. McDonald*, 7 F. Supp. 3d 422, 433 (D. Del.), *aff'd*, 573 F. App'x 236 (3d Cir. 2014); *see also Rodriguez v. Stevenson*, 243 F. Supp. 2d 58, 63 (D. Del. 2002) ("The agency's immunity extends to its officials acting in their official capacities. Thus, the [DFCYF] officials enjoy the immunity of the state." (internal citation omitted)).

Those prohibitions notwithstanding, "the Eleventh Amendment permits suits for *prospective injunctive relief* against state officials acting in violation of federal law." *See Stones*, 7 F. Supp. at 433 (emphasis added) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Thompson's request for reinstatement is a claim for prospective injunctive relief which, if adequately pleaded, is not barred by the Eleventh Amendment. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002) ("[Plaintiff's] claim for reinstatement . . . is the type of injunctive, 'forward-looking' relief cognizable under *Ex parte Young*.").

2. Adequacy of Pleading

Thompson contends that she was "deprived . . . of property and liberty rights without substantive and procedural due process of law in violation of the Fourteenth Amendment to the United States Constitution. (D.I. 1 ¶ 51). The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const, amend. XIV, § 1. This prohibition "applies to matters of substantive law as well as to matters of procedure." *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846–47 (1992) (quoting *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring)).

To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that [s]he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State*

*Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000). "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process," however. *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). The Third Circuit has stated that public employment is not a fundamental right entitled to substantive due process protection, *see Nicholas*, 227 F.3d at 143 (holding "public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution") and thus Thompson cannot make a substantive due process claim relating to her demotion or termination.

To prevail on a procedural due process claim under § 1983, a plaintiff must plead: (1) deprivation of an individual interest in "life, liberty, or property" under the Fourteenth Amendment, and (2) a failure to provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234–35 (3d Cir. 2006). Thompson alleges that she had a property interest in continued employment first as Education Supervisor and later as a teacher. (D.I. 1 ¶¶ 48-49). To have a constitutionally protected property interest in employment, a person "must have more than a unilateral expectation of it. [A person] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To determine whether public employment creates a property interest, the Court looks to state law. *See Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Such an entitlement may arise from "state statute or regulation or [] from government policy or a mutually explicit understanding between a government employer and an employee." *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993) (citing *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)).

Thompson asserts that DEL. CODE. ANN. tit. 29 § 5922 creates an entitlement to continued employment as Education Supervisor and that "state law" created an entitlement to continued

7

employment as a teacher. Section 5922, which enables the MERB, states that "[t]he rules shall provide for a period of probation before appointment or promotion is made complete and during which period a probationer may be discharged or reduced in class or rank." DEL. CODE. ANN. tit. 29 § 5922. The MERB rules provide that "[e]mployees may be dismissed at any time during the initial probationary period. Except where a violation of Chapter 2 is alleged, probationary employees may not appeal the decision." Merit Employees Relation Board, State of Delaware Merit Rules 9.2 (2018). It is undisputed that Thompson was a probationary employee during her employment at DSCYF. Thus, under the MERB rules, she could be dismissed at any point and cannot be found to have had a property interest arising from her probationary status[3]. To the extent that Thompson contends her "employment by Defendants [was] as a teacher who could be terminated only for cause pursuant to State Law," the assertion lacks merit. In Delaware, a "heavy presumption" exists that all state employees are employed at-will, "unless otherwise expressly stated." *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001). Plaintiffs have identified no statute, policy, or regulation in Delaware, or explicit agreement between Thompson and DSCYF, that her employment as a teacher would be terminable only for cause. To the contrary, the Complaint suggests that Thompson was a probationary employee during the entirety of her time with DSCYF, allowing Defendant to terminate her employment at any time. For these reasons, the Court finds that Thompson has failed to plead a property interest in continued employment with DSCYF.

Alternatively, Thompson alleges an infringement of her liberty interest due to Defendants "disseminating false, misleading and defamatory information concerning Plaintiff." (D.I. 1 ¶¶ 50-

---

[3] Thompson has not pleaded a violation of Chapter 2 of the MERB rules, and thus the Court does not consider whether such an allegation would change the analysis above.

51). "The liberty interests protected by procedural due process are broad in scope." *Robb*, 733 F.2d at 293 (citing *Stanley v. Illinois*, 405 U.S. 645, 647–49 (1972)). However "[a]n employment action implicates a fourteenth amendment liberty interest only if it (1) is based on a 'charge against [the individual] that might seriously damage his standing and associations in the community . . . , for example, that he had been guilty of dishonesty, or immorality' or (2) 'impose[s] on him a stigma of other disability that forecloses his freedom to take advantage of other employment opportunities.'" *Id.* (citing *Roth*, 408 U.S. at 573). The Third Circuit has made clear that "[s]tigma to reputation alone, absent some accompanying deprivation of present or future employment, is not a liberty interest protected by the fourteenth amendment." *Id.*

The "stigma-plus" test requires a plaintiff to show "a stigma to [his or her] reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236. To assert stigma, a plaintiff must plead stigmatizing statements: "(1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236. Thompson has failed to do so. The Complaint states that "[u]pon information and belief Defendants disseminated false and misleading information concerning Plaintiff's professional reputation and abilities because within days of February 17, 2017 Plaintiff began hearing from coworkers and associates that the perception within and without DSCYF was that Plaintiff was being demoted for poor performance." (D.I. 1 ¶ 26). Though the Court must take all well-pleaded facts as true, it is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *See Morse*, 132 F.3d at 906. Thompson asserts, without proof, that the Individual Defendants disseminated false and misleading information. Absent factual content indicating what false and stigmatizing statements were made, and by whom, the Court cannot accept Thompson's unwarranted suggestion that a perception amongst her coworkers that she was demoted for poor performance necessarily indicates that one of the Defendants disseminated false

9

or misleading information about her.  Thompson has not made a facially plausible showing of stigma and, without such a showing, fails to identify a liberty interest.  Because Thompson has not sufficiently pleaded the existence of either a property or liberty interest, she cannot maintain a due process claim against the Individual Defendants in their official capacity.  For this reason, Count I must be dismissed.

### B. Counts II, III, IV, V: Due Process Against Individual Defendants

Thompson fails to state a claim for relief in Counts II through V for due process violations against the Individual Defendants in their personal capacities.  The Third Circuit has held that individual state officials or employees can be held personally liable under § 1983.  *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (citing *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 567 n.10 (1st Cir. 1989)).  To establish a § 1983 claim against an individual, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."  *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 537 (D. Del. 1996) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)).  Counts II through V mimic the due process allegations set forth in Count I, but each names one of the Individual Defendants: McGonigal (Count II); McManus (Count III); Manning (Count IV); and Porter (Count V).  As discussed above, however, the Complaint fails to plead that Thompson was deprived of a property or liberty right in violation of the Fourteenth Amendment.  For this reason, Thompson cannot maintain due process claims against any of the Individual Defendants and Counts II, III, IV, and V must be dismissed.

### C. Count VI: Civil Conspiracy Pursuant to 42 U.S.C. §§ 1983, 1985

Thompson has failed to state a claim for civil conspiracy under either § 1983 or § 1985. To prevail on a civil conspiracy claim under § 1983, a plaintiff "must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007) (internal quotations and citation omitted). "[A] conspiracy claim requires more than mere conjecture as to an agreement." *Grubbs v. Univ. of Del. Police Dep't.*, 174 F. Supp. 3d 839, 859 (D. Del. 2016) (citing *Great W. Mining. & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010)). Instead, a conspiracy claim requires Thompson to "provide facts establishing the time of the agreement, the parties involved, the duration of the agreement and the object of the agreement." *Id.*; *see also Simonton v. Tennis*, 437 F. App'x 60, 63 (3d Cir. 2011) ("[T]he allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation."). Moreover, Thompson's claim must allege "at least some facts which could permit a reasonable inference of a conspiracy to be drawn." *Crosby v. Piazza*, 465 F. App'x 168, 173 n.3 (3d Cir. 2012).

Here, Count VI alleges that the "Individual Defendants agreed with each other to deprive Plaintiff of her procedural and substantive right to due process of law with respect to employment decisions affecting her property and liberty interests." (D.I. 1 ¶ 77). Further, the Complaint states that "Defendants engaged in overt acts in furtherance of their agreement by: refusing to allow

Plaintiff access to the Grievance process when terminating her from the Education Supervisor position; concealing from Plaintiff that Porter had been ordered reinstated to the Education Supervisor position; allowing Porter to make employment decisions concerning Plaintiff, and take employment actions against Plaintiff, including but not limited to: (a) terminating Plaintiff's employment as a teacher, (b) controlling and manipulating the Grievance Process so as to destroy any opportunity of a fair process for Plaintiff; (c) disseminating false, misleading and defamatory information regarding Plaintiff to prospective employees including public education agencies in other states." (*Id.* ¶ 78). These allegations are wholly conclusory and fail to include any facts that would permit a reasonable inference that any two Defendants (let alone all of the Individual Defendants) conspired to violate Thompson's constitutional rights. There are no facts pleaded regarding the time, place, or conduct of the alleged conspiracy between the listed Defendants (and unnamed others). Because the civil conspiracy claim under § 1983 is based on conclusory allegations, it must be dismissed for failure to state a claim.

Alternatively, "[t]o state a claim under § 1985(3) a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Fisher v. McBride*, No. 04-189 (JJF), 2007 WL 120079, at *4 (D. Del. Jan. 12, 2007) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). Additionally, the claim "must include an allegation that the conspiracy was motivated by race or class-based invidious discrimination." *Id.* (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–103 (1971)). Even if Thomson had sufficiently pleaded that a conspiracy so existed, the Complaint includes no allegations that any such conspiracy was

motivated by race or class-based invidious discrimination. Thus, Thompson has failed to state a claim against the Defendants for civil conspiracy under either § 1983 or § 1985. Count VI of the Complaint must be dismissed.

### D. Counts VII, VIII, & IX

While Defendants have not filed a motion for lack of subject matter jurisdiction in this case, the motion for dismissal and accompanying brief suggest that Counts VII, VIII, and IX are improper because the DSCYF is protected from liability by the Eleventh Amendment and sovereign immunity. (D.I. 14 at 18 (stating "it also bears noting that claims against DSCYF are barred by the Eleventh Amendment"). District courts "have an ever-present obligation to satisfy themselves of their subject matter jurisdiction" and may raise the issue *sua sponte*. *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Under the Third Circuit, "a claim of sovereign immunity advances a jurisdictional bar . . . which the court may raise *sua sponte*." *United States v. Bein*, 214 F.3d 408, 412 (3d Cir. 2000). If Defendants enjoy sovereign immunity from certain claims, the Court lacks subject-matter jurisdiction to adjudicate them. *Id*.

As discussed above, absent consent or waiver, the Eleventh Amendment bars suits in federal court naming the state or its departments as a defendant. *See Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Delaware state courts have held that a contract entered into by the state or one of its agencies waives sovereign immunity over a dispute relating to that contract. *See Blair v. Anderson*, 325 A.2d 94, 96 (Del. 1974); *Castetter v. Delaware Dep't of Labor*, No. 01C-03-007 (HDR), 2002 WL 819244, at *4 (Del. Super. Ct. Apr. 30, 2002) ("In authorizing an agency of the State to enter into a valid contract, 'the General Assembly has necessarily waived the State's

immunity to suit for breach by the State of that contract.'"). A review of the enabling statute for DSCYF informs the Court that the Department's has been supplied with the power to enter into valid employment contracts and has thus necessarily waived the State's immunity to suit for breach thereof. *See* DEL. CODE. ANN. tit. 29 § 9005(5)[4]. For these reasons, the Court finds that Counts VII, VIII, and IX are not barred by sovereign immunity. Moreover, Defendants have not argued that these counts fail to state a claim under Rule 12(b)(6), and the Court will accept that they do.

Nevertheless, the Third Circuit had held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Here, the Complaint fails to state a claim with respect to the federal claims in Counts I through VI, and no other considerations of judicial economy, convenience, or fairness have been raised. The Court will decline to exercise supplemental jurisdiction over Thompson's state law contract claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413 (D. Del. 1993) (declining jurisdiction over state tort law claims after ruling against the plaintiff-arrestee's remaining § 1983 claim).

---

[4]  Section 9005(5) provides the head of the Department with the ability to "[m]ake and enter into any and all contracts, agreements or stipulations, and retain, employ and contract for the services of private and public consultants, research and technical personnel and to procure by contract consulting, research, technical and other services and facilities from public and private agencies in this State and other states, whenever the same shall be deemed by the Secretary to be necessary in the performance of the functions of the Department."

### E. Count X – Thompson's Defamation Claim

Thompson fails to state a claim for defamation against Defendants. "[T]he elements of a defamation claim in Delaware are (1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff." *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994) (citing *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978); Restatement (Second) of Torts, § 558 (1977); *Gonzalez v. Avon Prod., Inc.*, 609 F. Supp. 1555, 1558 (D. Del. 1985)). The Complaint alleges that "Defendants have defamed Thompson by . . . fabricating then publishing announcing and disseminating, (including dissemination to prospective employers and the education departments of neighboring states) knowingly false accusations and justifications for terminating Plaintiff's employment; falsely accusing her of deficient communication skills, wrongfully disclosing confidential information, being disrespectful and inappropriately confrontational, and failing to implement initiatives, all of which amounts to falsely maligning her to her profession or occupation." (D.I. 1 ¶ 99). Additionally, each of the due process claims against the Defendants alleges that each Defendant "disseminat[ed] false, misleading and defamatory information concerning Plaintiff." (*Id.* ¶¶ 51(d), 56(d), 62(d), 68(d), 74(d)). These generalized allegations against the Defendants are wholly insufficient to survive a Rule 12(b)(6) challenge. As noted above, while the Court must accept all of the Complaint's well-pleaded facts as true, it is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *See Morse*, 132 F.3d at 906. As they stand, the bald assertions that all Defendants defamed Thompson, without the necessary support of well-pleaded facts, fail to state a claim upon

which relief may be granted. Therefore, the Court will grant the motion to dismiss the defamation claim.[5]

### F. Count XI – Mr. Thompson's State Law Claim for Loss of Consortium

Mr. Thompson has failed to state a claim for loss of consortium under the laws of the state of Delaware. The elements of this tort are: "(1) that the party asserting [the claim] was married to the person who suffered physical injury at the time the injury occurred, (2) that the spouse suffered injury which deprived the other spouse of some benefit which formerly existed in the marriage, and (3) that the injured spouse has a valid cause of action for recovery against the tortfeasor." *Lacy v. G.D. Searle & Co.*, 484 A.2d 527, 532 (Del. Super. Ct. 1984). Under Delaware law, claims for loss of consortium are derivative in that they are "derived from and require[] a valid claim of injury by the other spouse." *Nelson v. Fleet Nat. Bank*, 949 F. Supp. 254, 264 (D. Del. 1996). Moreover, "it is clear from the case law a loss of consortium claim requires a physical, as opposed to pecuniary, injury to the plaintiff's spouse." *Id.* Mr. Thompson has neither asserted facts that his wife incurred a physical injury that deprived him of some benefit which formerly existed in the marriage nor that his wife has a valid cause of action for recovery against the Defendants relating to any physical injury. A review of the Complaint informs the Court of the following allegations: (1) "[t]he action of Defendants have caused Mrs. Thompson to suffer financial loss, damage to her reputation, extreme emotional and mental damage and distress, exacerbated her physical ailments, and injured and interfered with the marital relationship between her and her Husband," (D.I. 1 ¶ 103); (2) "Defendants' . . . defamation was a proximate cause of Thompson [sic] suffering, *inter alia*, past, present, and future emotional and mental distress, medical expenses and loss of

---

[5] Even if Thompson had sufficiently asserted a claim for defamation, the Court would decline to exercise supplemental jurisdiction over the claim.

reputation entitling her to remedies and damages," (*Id.* ¶ 103); and (3) "[a]s a result of the aforesaid mental, emotional and physical injuries to Thompson caused by Defendants, Husband, Mr. Thompson has lost the care, comfort, companionship, society, and consortium of his wife," (*Id.* ¶ 103). The Complaint lacks factual allegations that Thompson was physically injured by Defendants in any way and the only tort claim brought by Thompson (defamation), fails to state a claim. Thus, Mr. Thompson has failed to state a claim upon which relief may be granted against the Defendants for loss of consortium under that laws of Delaware. Count XI must be dismissed.

### G. Count XII – Mr. Thompson's Loss of Consortium Claims Pursuant to § 1983

Count XII alleges that "[a]s spouse of Plaintiff, Mr. Thompson possess [sic] a liberty interest under the Due Process Clause which entitles he and his wife to pursue happy, intimate association, free from unlawful government intrusion" and "[t]he acts of the individual Defendants, as set forth in Counts I through V herein constitute unlawful intrusion into Mrs. and Mr. Thompson's marital relationship." (D.I. 1 ¶¶ 106-07). "It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of [his wife's] constitutional rights." *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) (citations omitted). The Third Circuit, however, has yet to address whether a spouse may recover for his own, direct loss of consortium claim relating to a liberty interest in consortium. Thus far, the district courts under the Third Circuit have split on whether a spouse may so recover. *Compare Pahle*, 227 F.Supp.2d at 383 (finding there could be a constitutional liberty interest in consortium but dismissing the claim as inadequately pleaded) *with Norcross v. Town of Hammonton*, No. 042536, 2006 WL 1995021, at *1–3 (D.N.J. July 13, 2006) (finding no constitutional liberty interest in consortium).

Nevertheless, and without deciding whether a constitutional liberty interest exists in consortium, it has been held that "[e]ven if a direct claim for loss of consortium exists under

17

§ 1983, because only deliberate conduct implicates due process, such a direct claim would require that the state action be specifically aimed at interfering with protected aspects' of the spousal relationship." *Williams v. City of Chester*, No. 14-4420, 2015 WL 224384, at *4 (E.D. Pa. Jan. 15, 2015) (citing *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 192 (3d Cir. 2009); *Mintz v. Upper Mount Bethel Twp.*, No. 12–6719, 2013 WL 3090720, at *7 (E.D. Pa. June 20, 2013)) (internal quotations omitted). Here, the Complaint alleges no facts that the Individual Defendants specifically aimed to interfere with Mr. Thompson's rights to "pursue happy, intimate association, free from unlawful government intrusion." For this reason, Count XII must be dismissed.

### H.  Count XIII[6] -- Delaware Whistleblowers' Protection Act Claim

Thompson cannot maintain a claim against Defendants under the Delaware Whistleblowers' Protection Act ("WPA"), 19 Del. C. § 1701 et seq. As a preliminary matter, Delaware state courts have "ruled that individual state officials and employees cannot be sued under the Whistleblowers' Protection Act." *See Postell v. Eggers*, No. 06-11-021 (JTV), 2008 WL 134830, at *5 (Del. Super. Ct. Jan. 15, 2008) (unpublished) (citing *Tomei v. Sharp*, 902 A.2d 757, 767 (Del. Super. Ct. 2006)). For this reason, Count XIII must be dismissed with prejudice as to Defendants McGonigal, McManus, Porter, and Manning.

As for DSCYF, the WPA claim is precluded by the Eleventh Amendment. Courts in this district have previously held that "Delaware has not consented to be sued in federal court under the WPA" and that state agencies are "immune from suit in federal court under the Eleventh Amendment for [a] WPA claim." *Fender v. Delaware Div. of Revenue*, No. 12-1364 (GMS), 2014

---

[6]  The Complaint lists "Count XII" twice – first for Mr. Thompson's loss of consortium claim under § 1983 and again for the Whistleblowers' Protection Act claim – for the sake of clarity, the Court has renumbered the whistleblower claim as Count XIII.

18

WL 4635416, at *6 (D. Del. Sept. 15, 2014), *aff'd*, 628 F. App'x 95 (3d Cir. 2015). For this reason, Count XIII must is dismissed as to the DSCYF with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Combined Motion for Summary Judgment and for Dismiss (D.I. 13) is GRANTED-IN-PART and DENIED-IN-PART. Thompson's motion for summary judgment is DENIED. An appropriate order will follow.