IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEBRA R. THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-1236 (MN) |
| | ) |
| STATE OF DELAWARE DEPARTMENT | ) |
| OF SERVICES FOR CHILDREN, YOUTH | ) |
| AND THEIR FAMILIES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Victor F. Battaglia, Sr., BIGGS AND BATTAGLIA, Wilmington, DE – Attorneys for Plaintiffs

Joseph C. Handlon, Adria B. Martinelli, Deputy Attorneys General, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants.

September 28, 2020
Wilmington, Delaware

**NOREIKA, U.S., DISTRICT JUDGE**

Presently before the Court are the objections of Plaintiff ("Plaintiff" or "Ms. Thompson") (D.I. 43) to Magistrate Judge Thynge's Report and Recommendation (D.I. 42, "the Report"). The Report recommended granting the motion to dismiss (D.I. 34) the First Amended Complaint ("Amended Complaint") (D.I. 31) filed by Defendants State of Delaware Department of Services for Children, Youth, and their Families ("DSCYF"), and DSCYF employees Alison McGonigal, Karryl McManus, Angela Porter, and Josette Manning ("Individual Defendants and collectively with DSCYF "Defendants"). The Court has reviewed the Report (D.I. 42), Plaintiff's objections (D.I. 43) and Defendants' responses thereto (D.I. 47), and the Court has considered *de novo* the entirety of Defendants' motion to dismiss and Plaintiff's response to the motion (*see* D.I 34, 35, 37, 38). For the reasons set forth below, Plaintiff's objections are OVERRULED as MOOT, and Defendant's motion to dismiss is GRANTED.

**I.     BACKGROUND**

The background of this case has been discussed at length in the Court's earlier opinion (D.I. 29) and the Report (D.I. 42). On or about July 11, 2016, Ms. Thompson left her job as a Development Coach for the Professional Development Center for Educators/Delaware Academy for School Leadership at the University of Delaware to take a job as an Education Supervisor with DSCYF. (D.I. 31 ¶¶ 8, 11). The Education Supervisor position had previously been held by Defendant Porter, who had been allegedly "terminated for personal reasons." (*Id.* ¶ 9). Ms. Thompson alleges that she was not informed that Porter had filed a grievance with respect to the termination and that an appeal process was ongoing. (*Id.*). The Amended Complaint states that "the DSCYF administrators had concerns that the education side of the Department was weak and not up to date on current rules, laws and process" and after Ms. Thompson started in the new role she "began to revamp and upgrade the system" and uncovered "misuse of funds, lack of

2

accountability and oversight, and favoritism" in a number of areas  (*Id.* ¶¶ 13-15).  Ms. Thompson alleges that, despite these issues, "in the short time she was Education Supervisor, [she] brought the Education Unit into compliance, provided more support to the administrators, and handled the budget funding more efficiently."  (*Id.* ¶ 16).  The Amended Complaint contends that Ms. Thompson's performance was praised by her associates and co-workers and garnered a written performance evaluation of "Meets Expectations."  (*Id.* ¶¶ 17-18).

In early October 2016, Ms. Thompson learned that Porter had filed a grievance and successfully contested her termination, and that the Merit Employee Relations Board ("MERB") ordered Porter be reinstated.  (*Id.* ¶¶ 20, 23).  The Amended Complaint alleges that Ms. Thompson was then informed in writing that, upon her return, Porter would be filling a newly created position at DSCYF titled Transition Coordinator.  (*Id.* ¶ 21).  On February 17, 2017, Defendant McGonigal then verbally informed Ms. Thompson that Porter would be reinstated as Education Supervisor.  (*Id.* ¶ 24).  Ms. Thompson alleges that she was told she would become the Transition Coordinator. (*Id.* ¶29).  She further alleges that "her attempts to fulfill assignments were thwarted by Porter and the other Defendants." (*Id.*).  The Amended Complaint alleges that Ms. Thompson was denied the right to a grievance and both pre-termination and post termination processes.  (*Id.* ¶ 27).

Ms. Thompson claims that "[u]pon information and belief Defendants disseminated false and misleading information concerning Plaintiff's professional reputation and abilities because within days of February 17, 2017 Plaintiff began hearing from coworkers and associates that the perception within and without DSCYF was that Plaintiff was being demoted for poor performance." (*Id.* ¶ 25).

On May 19, 2017, Ms. Thompson was hospitalized for an emergency surgery and could not work until October 2017.  (*Id.* ¶ 38).  The Amended Complaint alleges that during this time,

3

"Defendants[] unilaterally reduced her to a teaching position for which she did not yet have the required special education certification" and "gave Porter supervisory authority over her." (*Id.* ¶ 35). Ms. Thompson claims that she returned to work in October 2017 to a teaching position at Terry Psychiatric Children's Center but was then hospitalized again in January 2018. (*Id.* ¶ 41). She further claims that during her time as a teacher, Defendants asserted that she needed appropriate special education certifications. (*Id.* ¶ 40). The Amended Complaint claims that in April 2018, Porter recommended that Ms. Thompson be terminated for failure to obtain required certification. (*Id.* ¶ 44). Ms. Thompson filed a grievance and attended a hearing on April 24, 2018, where it was determined that she would have until June 30, 2018 to obtain the necessary credentials. (*Id.* ¶ 45). The Amended Complaint asserts that "Plaintiff was unable to acquire the purported certification and her employment was terminated through a Notice from Defendant [] Manning dated July 2, 2018." (*Id.* ¶ 47). Ms. Thompson contends that she applied to over 60 teaching and administrative positions but did not gain employment until August 8, 2018. (*Id.* ¶ 49).

On August 13, 2018, Ms. Thompson filed this employment action against DSCYF, McGonigal, McManus, Porter, and Manning claiming that her demotion and termination violate both federal and state law. (D.I. 1). Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) in part and summary judgment pursuant to Rule 56 in part. (D.I. 13). The Court granted the motion to dismiss but denied the motion for summary judgment as premature.[1]

---

[1]     Ms. Thompson also moved for summary judgment (D.I. 21), which the Court denied.

Thereafter on September 24, 2019, Ms. Thompson filed First Amended Complaint, adding certain factual allegations and reasserting most of the counts in her original Complaint.[2]  Counts I through V assert violations of Due Process based on Plaintiff's assertion that her "employment as a probationary employee in the State's merit system in the position of Education Supervisor was a property right." (D.I. 31 ¶¶ 53, 56. 60, 66, 70).  The remaining Counts assert state law claims.  On October 22, 2019, Defendants moved to dismiss the Amended Complaint.  (D.I. 34, 35).  Plaintiff opposed. (D.I. 37).  On March 10, 2020, Magistrate Judge Thynge issued the Report, recommending granting of Defendants' motion.  Plaintiff timely objected.

## II.     LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11.  Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief

---

[2]     Ms. Thompson did not reassert her claims for conspiracy or defamation.  In addition, Ms. Thompson's husband was removed as a plaintiff and the counts asserted on behalf of Mr. Thompson were also dropped.

that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### III.  DISCUSSION

In the ten pages allotted, Plaintiff lodges eight objections, objecting to virtually every holding in the Report. Although the Court's initial review suggests that each of the objections should be overruled, it is simply not an efficient use of time to address each one. Thus, the Court will address Defendants' motion to dismiss *de novo*.

#### A.  Counts I-V: Due Process Violations

Counts I through V assert violations of Due Process based on Plaintiff's assertion that her "employment as a probationary employee in the State's merit system in the position of Education Supervisor was a property right." (D.I. 31 ¶¶ 53, 56. 60, 66, 70). Count I alleges violation of the Fourteenth Amendment by DSCYF and the Individual Defendants in their official capacities. Counts II through V assert due process violations against the Individual Defendants in their personal capacities.

### 1. Substantive Due Process

The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law." U.S. Const, amend. XIV, § 1. This prohibition "applies to matters of substantive law as well as to matters of procedure." *Planned Parenthood of S.E. Pennsylvania v. Casey*, 505 U.S. 833, 846–47 (1992) (quoting *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring)). In her Amended Complaint, Plaintiff continues to allege that the Defendants "deprived Plaintiff of property rights without substantive and procedural due process of law in violation of the 14th Amendment to the United States Constitution, entitling Plaintiff to reinstatement and other prospective equitable relief and damages under 42 U.S.C. § 1983." (D.I. 31 ¶ 54). As the Court stated in its earlier opinion:

> To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that [s]he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000). "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process," however. *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). The Third Circuit has stated that public employment is not a fundamental right entitled to substantive due process protection, *see Nicholas*, 227 F.3d at 143 (holding "public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution") and thus Thompson cannot make a substantive due process claim relating to her demotion or termination.

(D.I. 29 at 6-7). Plaintiff has offered no basis for the Court to reconsider its prior decision, and thus to the extent Plaintiff intended to reassert substantive due process claims in her Amended Complaint, those claims are dismissed.

### 2. Procedural Due Process (Count I)

To prevail on a procedural due process claim under § 1983, a plaintiff must plead: (1) deprivation of an individual interest in "life, liberty, or property" under the Fourteenth

Amendment, and (2) a failure to provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234–35 (3d Cir. 2006). To have a constitutionally protected property interest in employment, a person "must have more than a unilateral expectation of it. [A person] must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To determine whether public employment creates a property interest, the Court looks to state law. *See Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). Such an entitlement may arise from "state statute or regulation or [] from government policy or a mutually explicit understanding between a government employer and an employee." *Carter v. City of Philadelphia*, 989 F.2d 117, 120 (3d Cir. 1993) (citing *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)). Here, Plaintiff alleges that her "employment as a probationary employee in the State's merit system in the position of Education Supervisor was a property right" for a number of reasons. The Court addresses each below.

        a.        § 5922 and the MERB Rule 9

Here Plaintiff asserts that DEL. CODE. ANN. tit. 29 § 5922 creates an entitlement to continued employment as Education Supervisor. The Court disagrees. Section 5922, which enables the MERB, states that "[t]he rules shall provide for a period of probation before appointment or promotion is made complete and during which period a probationer may be discharged or reduced in class or rank." DEL. CODE. ANN. tit. 29 § 5922. MERB Rule 9.2 provides that "[e]mployees may be dismissed at any time during the initial probationary period. Except where a violation of Chapter 2 is alleged, probationary employees may not appeal the decision." Merit Employees Relation Board, State of Delaware Merit Rules 9.2 (2018). Thus, as a

probationary employee,[3] under the MERB rules, Plaintiff could be dismissed at any point and cannot be found to have had a property interest arising from her probationary status.[4]

        b.      <u>Chapter 2</u>

As noted above, there is an exception in MERB Rule 9 when a violation of Chapter 2 is alleged. Chapter 2, titled "Non-Discrimination" provides:

> Discrimination in any human resource action covered by these rules or Merit system law because of race, color, national origin, sex, religion, age, disability, sexual orientation, gender identity, genetic information or other non-merit factors is prohibited.

In her Amended Complaint, Plaintiff does not allege discrimination or that she was treated differently based on a protected class. Instead, she asserts that "Defendant Porter's being reinstated to Plaintiff's Education Supervisor position was a non-merit factor which caused Plaintiff to be demoted." (D.I. 31 ¶¶ 53(b), 56(b), 60(b), 66(b), 70(b)). Plaintiff, however, has cited to no Delaware (or other) case suggesting that the meaning of "other non-merit factors" in Rule 2 relates to anything other than the "Discrimination" that is the title and subject of the section.

Absent such precedent, the Court will not interpret "other non-merit factors" in a way that is inconsistent with the rest of the language of the rule. *See U.S. v. EME Homer City Generation*, 727 F.3d 274, 292-92 (3d Cir. 2014) (holding that where statute permitted district courts' jurisdiction "to retrain such violation, to require compliance, to assess such civil penalty, to collect fees owed to the United States . . . and to award any other appropriate relief," the "other appropriate relief" was limited to forward-looking relief similar to the other enumerated examples, and did not

---

[3]     As previously noted, each of Counts I-V assert that Plaintiff's "employment as a probationary employee" was a property right. To the extent, Plaintiff asserts that she was no longer a probationary employee because her probation was improperly extended, the Court addresses that infra.

[4]     The Court addresses Plaintiff's attempt to assert a claim under Chapter 2 in section A(2)(b).

9

include injunctive relief for completed violations); *see also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, (2003) (interpreting "other legal process" as limited to "some judicial or quasi-judicial mechanism" transferring property to discharge liability to be consistent with the preceding terms "levy, attachment, [and] garnishment"). Indeed, if "other non-merit factors" were construed to include factors wholly distinct from the discrimination referenced in Chapter 2, it would render meaningless the specific examples provided in the list.

            c.     <u>Rule 12</u>

Plaintiff asserts that MERB Rule 12 creates a property interest. MERB Rule 12, which addresses disciplinary measures, states:

> Employee Accountability. Employees shall be held accountable for their conduct. Disciplinary measures up to and including dismissal shall be taken only for just cause. "Just cause" means that management has sufficient reasons for imposing accountability. Just cause requires: showing that the employee has committed the charged offense; offering specified due process rights specified in this chapter; and imposing a penalty appropriate to the circumstances.

Defendants assert that Rule 12 does not apply to probationary employees. (D.I. 38 at 4). And Plaintiff cites to no authority that Rule 12 does apply to probationary employees.[5] The Court agrees with Defendants that Rule 12 does not. Indeed, it would be inconsistent to apply a "just cause" standard to probationary employees given that Rule 9.2 provides that absent a violation of Chapter 2, "[e]mployees may be dismissed at any time during the initial probationary period."

Moreover, Plaintiff's removal from the Education Supervisor position when Porter was reinstated was not a disciplinary measure covered by Merit Rule 12. Plaintiff, in essence, asserts

---

[5]     Plaintiff asserts that "Defendants concede that MERB Rule 12"Employee Accountability" applies to probationary employees." (D.I. 37 at 11). Plaintiff, however, cites nothing in support of that concession and Defendants dispute it. (D.I. 38 at 4).

10

that a demotion by its nature is a disciplinary action. (*See* D.I. 43 at 8). Again, however, Plaintiff cites to no authority to support that proposition. Indeed, valid bases, for example economic concerns, invariably exist for the demotion, transfer, or removal of an employee from her position that would not constitute a disciplinary action.

### d. Extension of Plaintiff's probationary status

As previously noted, each of Plaintiff's Counts I-V reference a property right based on her probationary status. Nevertheless, in the allegations of the Amended Complaint, she asserts that there was "no valid basis for the extension [of her probation, and] it is without force or effect." (D.I. 31 ¶ 32). Plaintiff asserts that the extension was based on a number of "false assertions" that are referenced in the Amended Complaint. (D.I. 31 ¶31(a)-(c)). Again, however, Plaintiff cites to no legal support for the proposition that her allegations of false and misleading statements are a basis to invalidate the extension. The MERB rules provide that, "[u]pon the DHR [Department of Human Resources] Secretary's approval, probationary periods may be extended." Merit Employee Relations Board, State of Delaware Merit Rules 9.1 (2018). Plaintiff has not alleged that the DHR Secretary failed to approve the extension. Thus, the extension was proper and Plaintiff remained a probationary employee without a property interest.[6]

---

[6] In her Answering Brief, Plaintiff objects to Defendants references to the probation extension application. The Court notes, however, that courts may properly consider certain information beyond the four corners of a complaint when deciding a Rule 12(b)(6) motion to dismiss, including "exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221-22 n.3 (3d Cir. 2004) (internal citations omitted). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff referenced the extension application document in her Amended Complaint. (D.I. 31 ¶ 31). Indeed, she sets out the statements in the document in some detail in her Amended Complaint. (*Id.*). Having done so, she cannot complain of Defendants' additional reference to the document.

11

e. <u>Delaware law</u>

To the extent that Plaintiff contends her employment could be terminated only for cause pursuant to State Law, the assertion lacks merit. In Delaware, a "heavy presumption" exists that all state employees are employed at-will, "unless otherwise expressly stated." *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001).

Plaintiff asserts that her at-will status was altered by "explicit agreement, promissory estoppel, and breach of implied covenant of good faith and fair dealing." (D.I. 37 at 12 (citing *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436 (1996) and *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000)). The Supreme Court, however, "has set a high bar for how 'explicit' an understanding must be in order to support a property interest." *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960–61 (3d Cir. 2019) (citing examples in *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12 (1978); *Goldberg v. Kelly*, 397 U.S. 254, 262, (1970); *Leis v. Flynt*, 439 U.S. 438, 441-43 (1979)). And the Supreme Court "has declined to recognize such an interest where the claimants failed to 'show[] the requisite mutual understanding,' even if those claimants could show 'reasonable expectations of' receiving the benefit at issue." *Id.* (citing *Leis*, 439 U.S. at 441-43).

Here, Plaintiff has failed to allege facts suggesting an explicit understanding between the parties that she could be terminated only for cause, or that she had a property interest in maintaining her original salary. *See Leis*, 439 U.S. at 443 ("even if . . . respondents . . . had "reasonable expectations of professional service, . . . they have not shown the requisite mutual understanding" to state a property interest). The alleged promises related to Plaintiff's status once Porter returned to the DSCYF do not evidence a mutual understanding that Plaintiff would only be removed for cause, in contradiction to state statute. Indeed, the subsequent extension of Plaintiff's probationary

period further undermines any alleged "mutual understanding." Thus, the alleged promises offer "too slender a reed to support the weight of a constitutional right." *See McKinney*, 915 F.3d at 963.

### 3. Procedural Due Process (Counts II through V)

Plaintiff fails to state a claim for relief in Counts II through V for due process violations against the Individual Defendants in their personal capacities. The Third Circuit has held that individual state officials or employees can be held personally liable under § 1983. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (citing *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 567 n.10 (1st Cir. 1989)). To establish a § 1983 claim against an individual, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 537 (D. Del. 1996) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Counts II through V mimic the due process allegations set forth in Count I, but each names one of the Individual Defendants: McGonigal (Count II); McManus (Count III); Manning (Count IV); and Porter (Count V). As discussed above, however, the Amended Complaint fails to plead that Plaintiff was deprived of a property right in violation of the Fourteenth Amendment. For this reason, Plaintiff cannot maintain due process claims against any of the Individual Defendants and Counts II, III, IV, and V must be dismissed.

### B. Counts VI, VII, & VIII

Counts VI, VII and VIII assert state law claims for breach of contract and promissory estoppel against "the Employer." The Third Circuit had held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to

decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Here, the Amended Complaint fails to state a claim with respect to the federal claims in Counts I through V, and no other considerations of judicial economy, convenience, or fairness have been raised. The Court will decline to exercise supplemental jurisdiction over Thompson's state law contract claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"); *Cruz v. City of Wilmington*, 814 F. Supp. 405, 413 (D. Del. 1993) (declining jurisdiction over state tort law claims after ruling against the plaintiff-arrestee's remaining § 1983 claim).

        **C.**      **<u>Count IX – Delaware Whistleblowers' Protection Act Claim</u>**

Count IX asserts a claim against "employer State Agency" under the Delaware Whistleblowers' Protection Act ("WPA"), 19 DEL. C. § 1701 *et seq*. Although "employer State Agency" is not defined, the Court presumes it to be a reference to DSCYF. As the Court held in its earlier opinion, the WPA claim is precluded by the Eleventh Amendment. Courts in this district have previously held that "Delaware has not consented to be sued in federal court under the WPA" and that state agencies are "immune from suit in federal court under the Eleventh Amendment for [a] WPA claim." *Fender v. Delaware Div. of Revenue*, No. 12-1364 (GMS), 2014 WL 4635416, at *6 (D. Del. Sept. 15, 2014), *aff'd*, 628 F. App'x 95 (3d Cir. 2015). The Court previously dismissed this claim with prejudice, and the Plaintiffs have offered no reason for the Court to reconsider its prior decision. Count IX is thus (again) dismissed as to the DSCYF with prejudice.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint (D.I. 34) is GRANTED. An appropriate order will follow.